UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MARY KAY DUFFIE**,<br><br>Debtor. | Case No. **13-61593-13** |
| **STEVE and SHARON GOTCHER**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**MARY KAY DUFFIE**,<br><br>Defendant. | Adv No. **14-00013** |

# MEMORANDUM of DECISION

At Butte in said District this 13th day of November, 2014.

In this Adversary Proceeding, after due notice, a hearing was held November 3, 2014, in Butte on the Debtor/Defendant Mary Kay Duffie's Motion to Amend filed September 17, 2014, and on Debtor's Motion to Dismiss filed September 19, 2014. Both motions are opposed by the Plaintiffs, Steve and Sharon Gotcher. The Debtor was represented at the hearing by James C. White of Durham, North Carolina and Mark S. Hilario of Billings, Montana. The Plaintiffs were represented at the hearing by Kevin E. Vainio of Butte, Montana. The Court heard attorney argument on both matters. No exhibits or witness testimony were offered.

The Court would note that this Adversary Proceeding was commenced on May 7, 2014,

1

Debtor answered the complaint on July 7, 2014, and a pretrial scheduling conference was held September 2, 2014.  The deadline to file pretrial motions is December 15, 2014, and trial is scheduled to commence on January 26, 2015.  The instant motion to amend and motion to dismiss were filed after Debtor filed her answer and after the pretrial scheduling conference.  "A Rule 12(c) motion for judgment on the pleadings is the functional equivalent of a Rule 12(b)(6) motion to dismiss for failure to state a claim, except it is filed after the answer." *Forsman v. United Fin. Cas. Co.*, 966 F.Supp.2d 1091, 1096 (D.Mont. 2013), *citing Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).  Because an answer has been filed in this matter, the Court deems it appropriate to treat Debtor's motion to amend as a request for judgment on the pleadings under Rule 12(c).

      In addressing a Rule 12(c) challenge, as with a Rule 12(b)(6) challenge, the Court accepts all nonconclusory factual allegations in the complaint as true (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  To survive a motion to dismiss under Fed.R.Civ.P. 12(c), the pleadings "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570.)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Under Rule 12(c), "[j]udgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Forsman v. United Fin. Cas. Co.*, 966 F.Supp.2d at 1096.

BACKGROUND

On November 10, 2010, Debtor, d/b/a SRO Live[1] and as buyer, signed an Agreement for the Sale of Real Estate, seeking to purchase from Bozeman Rialto Redevelopment, L.P., as seller, property located at 10 W. Main St., Bozeman, Montana and referred to as the Rialto Theater. The purchase price Debtor agreed to pay for the Rialto Theater was $1,107,946.14.

On December 10, 2010, Debtor, with an address of 8050 Lupine Lane, Bozeman, Montana, and Stephen Michael[2], d/b/a SRO Live of 1346 The Alameda, Suite 7-205, San Jose, California, entered into a Commercial Lease Agreement whereby Debtor, as Landlord, leased the Rialto Theater to Stephen Michael, as Tenant, from December 10, 2010, to November 1, 2013.

On May 31, 2011, the Debtor allegedly sought to purchase by Contract for Deed, from The Dead Cat, LLC, for $250,000.00 a piece of property located at 215 W. Broadway St, Butte, Montana referred to as the Covellite Theater. Debtor's address in the Contract for Deed is listed as 1346 The Alameda, Suite 7-205, San Jose, CA 95126.[3] The Contract for Deed filed by the

---

[1] The name SRO Live was registered at the Montana Secretary of State's Office by Stephen Rangel.

[2] Stephen Michael also goes by the name Stephen Rangel.

[3] According to Debtor, the San Jose address is Stephen's corporate address. The property tax notices were sent to Debtor at 1346 The Alameda, Suite 7-205, San Jose, California because

Plaintiffs at docket no. 27-11 is signed by a member of The Dead Cat, LLC, but not the Debtor.

On June 1, 2011, Debtor, with an address of 8050 Lupine Lane, Bozeman, Montana, and Stephen Michael, d/b/a SRO Live of 1346 The Alameda, Suite 7-205, San Jose, California, entered into a Commercial Lease Agreement whereby Debtor, as Landlord, leased the Covellite Theater to Stephen, as Tenant, from June 1, 2011, to June 1, 2014.

By August of 2013, Debtor had fallen behind on her payments on the Rialto Theater. On August 26, 2013, Debtor, d/b/a SRO Live, executed a Forbearance Agreement wherein Debtor agreed to, among other things, make a payment of $18,519.00 within one day of the mutual execution of the Forbearance Agreement. On August 26, 2013, a check drawn on the Wittich Law Firm Iolta account was made payable to First Security Bank in the amount of $18,519.00. The memo line of the check indicates it is for the benefit of "Duffie for Rialto." According to Debtor, Stephen was the one who deposited the $18,519.00 in the Wittich Law Firm's trust account for the $18,519.00 payment.

In 2011 Stephen approached the Gotchers about investing in the Theaters. On September 8, 2011, the Gotchers and Stephen executed a "Co-Ownership Agreement between Stephen Gotcher and Sharon L. Westrom and Stephen Michael and Mary Kay Duffie." Stephen Gotcher, Sharon L. Westrom and Stephen Michael signed the Co-Ownership Agreement; Debtor did not. However, Debtor typed the Co-Ownership Agreement and admitted that "[a]lmost all actions are done by Stephen for or on behalf of Mary Kay, who is a passive owner of the theater properties." Pursuant to the Co-Ownership Agreement, in return for an investment of $140,000.00, Stephen

---

according to Debtor, Stephen was to pay the property taxes and insurance on the Theaters directly.

Gotcher and Sharon L. Westrom were going to purchase a 10% ownership interest in the Covellite and Rialto Theaters. The Co-Ownership Agreement provides that the combined price of the Theaters was $1,400,000.00, and that Stephen Michael and Debtor together would have a 5% ownership interest in the Theaters and that the remaining 85% of the Theaters would be owned by Stephen Michael's company, SRO Live. Plaintiffs maintain that Debtor and Stephen are husband and wife and that Debtor is affiliated with SRO Live. Debtor disagrees.

Debtor's relationship with Stephen began in 2002. Debtor contends she was never married to Stephen, but has admitted that she is in the possession of a picture in which she is wearing a wedding dress riding in a carriage with Stephen. Debtor explains that the picture was taken at a non-legal ceremony between Debtor and Stephen to signify their "significant otherness to each other." The two also never "resided" together, but Stephen, who Debtor refers to as her "lover" and "boyfriend," compensates Debtor for his room and board during his stays and visits.

Debtor also typed a Christmas letter in late 2011 or early 2012 that she sent to the Gotchers. Debtor and Stephen both signed the Christmas letter. The letter is addressed to Debtor and Stephen's "Family and Friends" and referring to the Covellite and Rialto Theaters, states "[Stephen] purchased two historic theaters on I-90 in Montana, and he's currently finishing a deal for a third." Debtor refers to Stephen later in the letter as her husband.

Sometime in 2012, the Gotchers filed an action against Debtor and Stephen in Gallatin County. That action stems from the Co-Ownership Agreement regarding the Theaters. Default judgment was entered in that matter against both Debtor and Stephen, but Debtor's default was later set aside. Debtor eventually filed on February 20, 2013, an answer in that action. In connection with that action, Debtor signed and filed in January of 2013, an affidavit in which

5

Debtor states that Plaintiffs "suddenly, and without warning or explanation, stopped making payments as agreed according to the terms of both verbal and written agreements." Debtor continues, in that same affidavit, to state that the discontinuance of regular payments by the Plaintiffs to Debtor and Stephen "while remaining in our properties without legal permission, resulted in temporary financial hardship for my husband and me starting in the spring of 2012." When questioned about referring to Stephen as her husband in the affidavit, Debtor explained at her April 9, 2014, deposition that "husband" is a shorthand term she uses when she is "wanting protection."

In her answer to Plaintiffs' state court complaint, Debtor also characterizes the relationship between herself, Stephen and the Plaintiffs as a "cooperative relationship stemming from the [Co-Ownership Agreement]" and proceeds to assert several counterclaims, including a breach of contract claim in which Debtor claimed that the Gotchers' failure to fully perform under the Co-Ownership Agreement harmed Debtor's ability to proceed with "the theater venture[.]" Debtor then asserts in her answer that "Plaintiffs are liable to Mary Kay for damages caused by their failure to fulfill their obligations under the cited agreement in an amount to be proven at trial." Debtor incurred legal fees in connection with the state court litigation and on October 22, 2013, signed an attorney's lien granting the Wittich Law Firm, P.C. a $35,000 attorney's lien against the Rialto Theater. The attorney's lien identifies Debtor as d/b/a SRO Live, but Debtor explained that she is a "financial ingenue" and stated during her deposition: "Well, hear this. It was clerical error, 'Mary Kay Duffie d/b/a SRO Live' – it was a clerical error at the title company. Okay?"

When asked about a bank statement from Manhattan Bank, addressed to Mary K. Duffie,

6

dba SRO Live, Debtor explained that "that is an account I opened while Stephen was out of town, for him on his behalf. It does not have my Social Security number. It - - he owns it. It's his account. He pays the checks. He gets the statements." Debtor clarified a bit later that she actually opened the account in December of 2011 using her Social Security number, and then Stephen later changed the account to his own name when he got back into town. Debtor could not remember the date the account was changed to Stephen's name, nor has the Court found anything in the record indicating that the name change occurred as represented by Debtor.

Other exhibits in the record include printed materials from the srolive website relating to the SMK Foundation. Debtor has indicated that the SMK Foundation is "Stephen's nonprofit." Debtor did not know whether SMK stood for Stephen Mary Kay, and further represented that the statement on the website that the SMK Foundation was "[f]ounded by philanthropists Stephen and Mary Kay Michael" did not refer to Debtor because she has never gone by the name Mary Kay Michael. Debtor characterized the reference to Mary Kay Michael on the srolive website as a "mistake by one of [Stephen's] people."

Debtor sought protection under Chapter 13 of the Bankruptcy Code on December 7, 2013. Debtor's Chapter 13 Plan filed April 28, 2014, was confirmed on April 30, 2014. The Liquidation analysis set forth in Debtor's confirmed Plan provides that priority and unsecured creditors will receive at least $3,000.00. As noted earlier, the Gotchers commenced this Adversary Proceeding on May 7, 2014, seeking to except $87,000.00, together with interest, costs and punitive damages from Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(B), 523(a)(2)(A), and § 523(a)(4)(6) [sic].

DISCUSSION and ANALYSIS

I.        Motion to Amend

Amendment of a complaint is governed by FED.R.CIV.P. 15(a), applicable to this Adversary Proceeding under F.R.B.P. 7015. Rule 15(a) allows a party to amend its pleading once as a matter of course under certain circumstances not present here. In these circumstances Rule 15(a)(2) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Plaintiffs do not consent.

The Ninth Circuit addressed amendment under Rule 15(a) in *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990):

> Under Fed.R.Civ.P. 15(a), after twenty days from the date when the initial complaint was served, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the rule should be interpreted with "extreme liberality," *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981), leave to amend is not to be granted automatically. A trial court may deny such a motion if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (listing these factors among others to be considered). Prejudice to the opposing party is the most important factor. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31, 91 S.Ct. 795, 802-03, 28 L.Ed.2d 77 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* 1487 (1990).

In *Jackson*, leave to amend was denied on the grounds of prejudice to the opposing party and undue delay of more than a year before the plaintiffs filed their amended complaint. 902 F.2d at 1387-88. The court found in *Jackson* that allowing the proposed amended complaint that added new claims would unduly prejudice the appellees because of the time and expense of continued litigation on a new theory, with the possibility of additional discovery. 902 F.2d at 1387-88.

This Court's pretrial scheduling order provides that "[a]ny and all requests for amendments to the pleadings or to join additional parties in the action, if allowed, shall be filed not later than November 7, 2014." Debtor's motion to amend was filed within the time for amendment provided in the pretrial order. After review of Debtor's amended answer, Plaintiffs' objection, and given the "extreme liberality" with which Rule 15(a) must be interpreted, *Jackson*, 902 F.2d at 1387, Debtor's motion to amend is granted.

II.     Motion to Dismiss

    a.     11 U.S.C. § 523(a)(4)(6)

Plaintiffs' complaint is not a model of clarity. The claim for relief under the above provision reads as follows:

### Conversion or Larceny of Pick-Up and Proceeds
### 11 U.S. C. 523(a)(4)(6)

30. Mary Kay Duffie and Stephen, acting with Mary Kay Duffie's knowledge and on her behalf, converted a pick-up truck belonging to the Plaintiff Steve Gotcher, sold it to a third person without Steve Gotcher's consent and/or converted the money they received to their own use, by applying it to the purchase price for the theater properties.

31. The foregoing described acts constitutes fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

32. Alternatively, the said acts constitute willful or malicious injury by Mary Kay Duffie and Stephen to Steve Gotcher or the property of Steve Gotcher.

### DAMAGES - MONEY LOST AS A RESULT OF FRAUD, LOSS OF PICK-UP

33. Although on page 2 of the Agreement drafted by Defendants three installment payments for Plaintiffs' $140,000 contribution to the purchase price were contemplated, there were no dates stated in the Agreement for these payments. Prior to making the last payment of $140,000, Plaintiffs discovered the fraud and deceit of Mary Kay Duffie and Stephen

> 34. As a result of the fraudulent assertions as aforesaid, which assertions were known by Mary Kay Duffie to be false, Plaintiffs justifiably relied upon the same, executed the Agreement and paid to Defendants the sum of $87,000 toward their purported obligations under the Agreement.
>
> 35. The Plaintiffs borrowed money to meet their obligations under the Agreement. Plaintiffs should be entitled to recover the amount of interest paid on these loans. Plaintiff should also be entitled to recover interest on other money given to Defendants at the legal rate.
>
> 36. Mary Kay Duffie should be held liable to Plaintiff Steve Gotcher in the amount of $2,500.00 as the value of the motor vehicle.

First, it is not entirely clear whether the Plaintiffs are asserting a claim under § 523(a)(4), § 523(a)(6) or both. The only mention of the pick-up truck appears in paragraphs 30 and 36 of the complaint, as cited above. These few skeletal facts do not support a claim as it relates to the pickup truck under either § 523(a)(4) or § 523(a)(6). Additionally, paragraphs 31 and 32 of the complaint refer to only the allegations set forth in paragraph 30 addressing conversion of the pickup truck. Therefore, it does not appear that the claims under either § 523(a)(4) or § 523(a)(6) involve the theaters. Furthermore, the damages section of the complaint, which is also quoted above, appears to relate to all aspects of the complaint, and not just the claims under 523(a)(4) and § 523(a)(6). As a consequence, the Court concludes that the reference to damages stemming from the Co-Ownership Agreement does not incorporate any claims from the Co-Ownership Agreement into the § 523(a)(4)/§ 523(a)(6) portion of the complaint.

Given the complete absence of any facts addressing the alleged conversion of the pickup truck, the Court cannot conceive of any way that Plaintiffs' claims under either § 523(a)(4) or § 523(a)(6) could be saved by amendment. Consequently, Plaintiffs' claims under 523(a)(4) and § 523(a)(6) of the complaint are dismissed with prejudice.

b.  11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debt for money obtained by the use of a written statement concerning a debtor's (or insider's) financial condition. The statute reads:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> * * *
>
> (B) use of a statement in writing–
>   (i) that is materially false;
>   (ii) respecting the debtor's or an insider's financial condition;
>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>   (iv) that the debtor caused to be made or published with intent to deceive[.]

The Ninth Circuit has reworded these requirements as follows:

> (1) a representation of fact by the debtor,
> (2) that was material,
> (3) that the debtor knew at the time to be false,
> (4) that the debtor made with the intention of deceiving the creditor,
> (5) upon which the creditor relied,
> (6) that the creditor's reliance was reasonable,
> (7) that damage proximately resulted from the representation.

*Siriani v. Nw. Nat'l Ins. Co., of Milwaukee, Wis. (In re Siriani)*, 967 F.2d 302, (9th Cir. 1992); *In re Gertsch*, 237 B.R. 160, 167 (9th Cir. BAP 1999) (adopting the elements required under the companion section 523(a)(2)(A), with the additional and obvious requirement that the alleged fraud stem from a false statement in writing); *Candland v. Insur. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *Avco Fin. Servs. of Billings v. Kidd (In re Kidd)*, 219 B.R.

11

278, 282 (Bankr. D. Mont. 1998); *In re Osborne*, 257 B.R. 14, 20 (Bankr. C.D. Cal. 2000).

In discussing the difference between §§ 523(a)(2)(A) and 523(a)(2)(B), the Supreme Court instructs that § 523(a)(2)(B) applies where the debt at issue "follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." *Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). On the issue of materiality, a financial statement that leaves "any discrepancy" between the overall impression left by the statement and the endorser's true financial status gives rise to a material falsehood for purposes of § 523(a)(2)(B). *North Park Credit v. Harmer (In re Harmer)*, 61 B.R. 1, 5 (Bankr. D.Utah 1984) (citing cases); *accord Tex. Am. Bank, Tyler, N.A. v. Barron, (In re Barron)*, 126 B.R. 255 (Bankr. E.D. Texas 1991) (citing cases). A "long line of cases" has held that in a personal financial statement, the "omission, concealment, or understatement of any of [a] debtor's material liabilities constitutes a 'materially false' statement." *Harmer*, 61 B.R. at 5.

Moreover, even if a debtor does not know of inaccuracies contained in a written financial statement, the Ninth Circuit has held that reckless disregard for the truth satisfies the knowledge element of § 523 and its predecessor. *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996). *See also Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 492 (6th Cir. 1986) (gross recklessness to the truth also satisfies the fourth element of intention of deceiving).

The only writing at issue in this case is the Co-Ownership Agreement that Debtor typed, but did not sign. The Co-Ownership Agreement does not contain any language that would accomplish the sale, transfer, assignment or conveyance of any interest in the Theaters. The Co-

Ownership Agreement states that the parties intend to own the Theaters as "Tenants in Common[,]" but the Agreement, in and of itself does not accomplish that ownership.

Putting aside the transfer of the properties, Plaintiffs complain that Debtor and Stephen did not actually own the theaters, that Debtor was purchasing the theaters for $1,357,946.14, or thereabouts, and not $1,400,000 as stated in the Agreement, and that Plaintiffs did not know that there were any mortgages on the theaters. As noted earlier, Debtor did not sign the Co-Ownership Agreement. In addition, Plaintiffs' assertion that they did not know there were mortgages on the property is contrary to the second paragraph of the Agreement which specifically provides what is to happen in the event Stephen and Debtor were "unable to meet mortgage obligations on either property." Finally, and more importantly, for purposes of § 523(a)(2)(B), is the fact that the Court can find nothing in the Co-Ownership Agreement that speaks to Debtor's financial condition. One of the elements that Plaintiffs must prove under § 523(a)(2)(B) is that Debtor made a statement in writing with regard to her financial condition. Plaintiffs make no allegation on this element and the Court cannot find anything in the record to suggest that Debtor misrepresented her financial condition to the Plaintiffs in writing. Based upon the record, amendment to the pleadings would not cure the deficiencies in Plaintiffs' § 523(a)(2)(B) claim and Debtor is entitled to dismissal of that claim with prejudice.

    c.    11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides that, "a discharge under . . . this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, . . . ." To prevail on a § 523(a)(2)(A) claim, a creditor must establish five elements:

13

"'(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.'" *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). *See also Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001*); Am. Express Travel Related Servs. Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). The Ninth Circuit has concluded that the nondisclosure of material information in the context of a business transaction will support an exception to discharge claim under § 523(a)(2)(A), analogizing such a situation to securities fraud. *See In re Apte*, 96 F.3d at 1323 ("the nondisclosure of a material fact in the face of a duty to disclose [establishes] the requisite reliance and causation for actual fraud under the Bankruptcy Code.")

The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the RESTATEMENT (SECOND) OF TORTS §§ 525-557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual fraud,'...they imply elements that the common law has defined them to include.").

The first three elements of § 523(a)(2)(A), when taken together, establish the element of

14

intent to deceive, which the creditor must establish by a preponderance of the evidence. In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor. In a two-party transaction, as distinguished from a three-party credit card transaction, the alleging party must prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence and not by reference to the totality of the circumstances. *Compare In re Slyman*, 234 F.3d at 1086, with *Citibank (S. D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

A creditor must establish that it relied on the false representations made by the debtor. *Field*, 116 S.Ct at 438 (1995). Such reliance need not be reasonable, but it must be justifiable. *Id*. As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person to whom the representations were made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the

15

> purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)). Interpreting this standard, the Ninth Circuit Court of Appeals teaches: "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense for fraud." *Apte*, 96 F.3d at 1322.

Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from his or her reliance on a representation that was made with the intent to deceive. *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id*. at 604. Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the RESTATEMENT (SECOND) OF TORTS, "the most widely accepted distillation of the common law of torts" for guidance on this issue. *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A. *See also In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002). In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether

16

and to what extent a creditor would have suffered a loss absent fraud. *Siriani,* 967 F.2d at 306.

Accepting all factual allegations in the complaint as true and construing the pleadings and attachments thereto in the light most favorable to the Plaintiffs, the Court concludes that Plaintiffs' § 523(a)(2)(A) claim has facial plausibility. Accordingly, Debtor's motion to dismiss the § 523(a)(2)(A) claim is denied.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. Debtor's Motion to Amend filed September 17, 2014, at docket no. 25 is granted; and Debtor shall immediately file her amended answer under its own separate docket entry.

2. Debtor's Motion to Dismiss filed September 19, 2014, at docket no. 26 is granted in part and denied in part; and all claims except Plaintiffs' claim for relief under § 523(a)(2)(A) are dismissed with prejudice. The parties shall proceed with Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana