UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MARY KAY DUFFIE**,<br><br>Debtor.<br><br>**STEVE and SHARON GOTCHER**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**MARY KAY DUFFIE**,<br><br>Defendant. | Case No. **13-61593-13**<br><br><br><br><br><br>Adv No. **14-00013** |

## MEMORANDUM of DECISION

At Butte in said District this 5th day of January, 2015.

Pending in this Adversary Proceeding is the Debtor/Defendant Mary Kay Duffie's Motion for Summary Judgment filed December 16, 2014, at docket no. 51. The motion is opposed by the Plaintiffs, Steve and Sharon Gotcher.

### BACKGROUND

Plaintiffs commenced this Adversary Proceeding on May 7, 2014, by filing a complaint seeking to except various amounts from Debtor's discharge under 11 U.S.C. §§ 523(a)(2)(B), 523(a)(2)(A), and 523(a)(4)(6) [sic], and requesting punitive damages. On November 13, 2014, the Court entered a Memorandum of Decision and Order dismissing all but Plaintiffs' claim under

1

11 U.S.C. § 523(a)(2)(A).  The material facts for purposes of this motion are contained in the Court's Memorandum of Decision found at docket no. 39 and are incorporated herein by reference.

In addition to the facts found at docket no. 39, the deadline to file pretrial motions was December 15, 2014.  Debtor filed her motion for summary judgment on December 15, 2014, but that motion was denied for improper procedure, and Debtor was granted leave to refile the motion in accordance with Mont. LBR 7056-1(a)(1) and LBR 9013-1(e).  As permitted and directed by the Court, Debtor refiled the motion for summary judgment on December 16, 2014, seeking judgment as a matter of law on the sole remaining claim.

Plaintiffs contend in their opposition to Debtor's motion for summary judgment filed December 30, 2014, that Debtor's motion for summary judgment is untimely.  For the reasons discussed above, that objection is overruled.  Plaintiffs also argue that Debtor's motion for summary judgment was not filed in time to allow for a hearing.  The Court would direct Plaintiffs to Mont. LBR 7056-1(d) which provides that "[u]nless the Court orders otherwise, no formal hearing on a motion for summary judgment will be conducted and the Court shall proceed to consider and rule upon the merits of any such motion . . . ."  Plaintiffs do, however, correctly note that Debtor's statement of uncontroverted facts is in narrative rather than serial form.  For purposes of the pending motion, the Court will overlook the form of the statement of uncontroverted facts and proceed to the merits of Debtor's motion.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility

2

of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if sufficient evidence exists for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226 (D.Mont. May 15, 2012).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.*

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court. As to materiality, the applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine. If the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, then summary judgment should not be granted. *Id*. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. Though the *Anderson* Court stated that at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249–50. In other words, the non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## APPLICABLE LAW and DISCUSSION

Section 523(a)(2)(A) provides that, "a discharge under . . . this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, . . . ." To prevail on a § 523(a)(2)(A) claim, a creditor must establish five elements: "'(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.'" *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). *See also Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001*); Am. Express Travel Related Servs.*

*Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). The Ninth Circuit has concluded that the nondisclosure of material information in the context of a business transaction will support an exception to discharge claim under § 523(a)(2)(A), analogizing such a situation to securities fraud. *See In re Apte*, 96 F.3d at 1323 ("the nondisclosure of a material fact in the face of a duty to disclose [establishes] the requisite reliance and causation for actual fraud under the Bankruptcy Code.")

The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the RESTATEMENT (SECOND) OF TORTS §§ 525-557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual fraud,'...they imply elements that the common law has defined them to include.").

The first three elements of § 523(a)(2)(A), when taken together, establish the element of intent to deceive, which the creditor must establish by a preponderance of the evidence. In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor. The Plaintiffs, as the alleging party, must prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence and not by reference to the totality of the circumstances. *Compare In re Slyman*, 234 F.3d at 1086, *with Citibank (S. D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). As to the remaining elements, a creditor sustains its burden of proof under §

5

523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

A creditor must establish that it relied on the false representations made by the debtor. *Field*, 116 S.Ct at 438 (1995). Such reliance need not be reasonable, but it must be justifiable. *Id*. As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person to whom the representations were made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)). Interpreting this standard, the Ninth Circuit Court of Appeals teaches: "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense for fraud." *Apte*, 96 F.3d at 1322.

Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim

6

sought to be discharged arose from an injury proximately resulting from his or her reliance on a representation that was made with the intent to deceive. *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id*. at 604. Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the RESTATEMENT (SECOND) OF TORTS, "the most widely accepted distillation of the common law of torts" for guidance on this issue. *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A. *See also In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002). In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud. *Siriani,* 967 F.2d at 306.

Debtor claims that summary judgment is appropriate because Plaintiffs only identify two misrepresentations in the Co-Ownership Agreement, the purchase price of the theaters and reference to Debtor and Stephen Michael as co-owners of the theater properties in Butte and Bozeman, and that the misrepresentations were not material, no harm flowed from such misrepresentations, and that Plaintiffs did not rely on the misrepresentations. Debtor contends that Steve Gotcher attempted to sabotage the business deal from the start and that Plaintiff's injuries stem from a "self-inflicted wound."

Plaintiffs counter that the misrepresentations made by Stephen Michael and Debtor,

7

through her silence, were extreme and extended beyond those discussed by Debtor in her motion for summary judgment. For example, Plaintiffs allege that Debtor represented that she was married to Stephen Michael. Also, Plaintiffs allege that during their business negotiations, Stephen Rangel did not use his real name, but instead used the name Stephen Michael, to hide a nefarious past. Plaintiffs also contend that Debtor misrepresented the extent of her ownership interest in the theaters and the fact that she did not have the authority to sell any interest in the theaters, even though Debtor, Stephen Michael, or both, sought to sell the Plaintiffs a ten percent interest in the theaters.

Based upon the record, the Court finds that material issues of fact precludes summary judgment on Plaintiffs' § 523(a)(2)(A) claim. In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Debtor/Defendant Mary Kay Duffie's Motion for Summary Judgment filed December 16, 2014, at docket no. 51 is denied.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana